UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

C. Michael Allen,

    Plaintiff,

v.                                                      Case No. 13-10263

WalMart Stores, Inc.,                                   Honorable Sean F. Cox

    Defendant.
_____/

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. #17)

This is an employment discrimination case. Plaintiff C. Michael Allen ("Plaintiff") alleges that Defendant Wal-Mart Stores, East LP (incorrectly referred to as Walmart Stores, Inc.) ("Defendant" or "Wal-Mart") violated the Family and Medical Leave Act ("FMLA")[1] by failing and/or refusing to restore him to his position of store manager following his return from an FMLA-protected leave. Defendant maintains that Plaintiff voluntarily resigned from his position prior to going on FMLA leave.

This matter is before the Court on Defendant's Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. #17). The motion has been fully briefed by the parties, and the Court heard oral argument on the motion on April 17, 2014. For the reasons set forth below, this Court shall GRANT Defendant's Motion for Summary Judgment.

### BACKGROUND

Plaintiff C. Michael Allen ("Plaintiff") began his employment at Wal-Mart in May 2007. (Pl. Dep. Attached to Def. Br. at Ex 1, pp. 19, 39). He was initially hired to fill the position of a

---

[1] 29 U.S.C. § 2601, *et seq.*

developmental store manager. (Pl. Dep. at 19). On July 21, 2008, Plaintiff officially accepted the position of store manager of the Commerce Township Wal-Mart. (Pl. Dep. at pp. 24, 38). As store manager, Plaintiff was responsible for ensuring the store's financial success, fostering community relations, supervising and managing hourly and salaried members of management, maintaining store cleanliness, etc. (Pl. Dep. at pp. 39-40).

Plaintiff directly reported to the Wal-Mart market manager who is responsible for the geographic area encompassing the Commerce Township store. (Pl. Dep. at pp. 22, 46). Until 2010, Michael Collischan ("Collischan") was Plaintiff's market manager supervisor.

As a store manager, Plaintiff received yearly performance reviews. On Plaintiff's first performance evaluation dated April 4, 2008 (Pl.'s Resp. at Ex. E), Collischan wrote that, overall, Plaintiff was a "Solid Performer," although there were areas of his performance that were rated "Development Needed." (Pl. Resp. at Ex. E).

On Plaintiff's second performance evaluation dated April 1, 2009, Collischan again noted that, overall, Plaintiff was a "Solid Performer" although there were still areas where development was needed. (Pl. Resp. at Ex. G).

On April 2, 2009, Plaintiff was placed on a "Performance Improvement Plan" ("PIP"). (Pl. Dep. p. 69). Although the parties do not give much detail about what a PIP entails, a PIP appears to be an agreement between the employee and Wal-Mart whereby performance areas needing improvement are highlighted and discussed, and plans to improve in those areas are laid out.

In September 2009, Collischan issued Plaintiff a written warning because Plaintiff failed to show adequate progress on his PIP. (Pl. Dep. at pp. 71-72; Pl. Resp. Ex. I). Plaintiff admitted that the store had, in fact, continued to operate below Wal-Mart's standards. (Pl. Dep at pp. 77, 79).

2

In early 2010, William Bartell ("Bartell") replaced Collischan as the market manager and Plaintiff's supervisor. (Pl. Dep. At 79). Collischan, however, still completed Plaintiff's April 16, 2010 performance review. In the April 2010 performance review, Collischan rated Plaintiff's overall performance as "Development Needed." (Pl. Resp. at Ex. J).

In September 2010, Bartell placed Plaintiff on a second PIP because of continued housekeeping issues, and Plaintiff's failure to hold lower management accountable. (Pl. Dep. at pp. 99-100; Pl. Resp. at Ex. K).

On October 13, 2010, Bartell and Cynthia Ewing ("Ewing"), the market human resource manager, issued a verbal coaching to Plaintiff because he was not showing improvement on the items listed in the September 2010 PIP. (Pl. Dep. at pp. 103-05; Pl. Resp. at Ex. L). Plaintiff continued to struggle with meeting the requirements of the PIP, and with the demands of the store manager position in general, due to personal stressors related to his family. (Pl. Dep. at 101). During his verbal coaching, Plaintiff claims that Bartell and Ewing told Plaintiff that he should "consider [his] family, consider looking at other opportunities." (Pl. Dep. at p. 115).

On October 18, 2010, Plaintiff sent his supervisor, Bartell, an e-mail, in which Plaintiff stated the following:

> Over the weekend, I have been reflecting on my position as the store manager of 2618. After much consideration, I feel that it would benefit me and the company if I considered taking another position within the company.
>
> The past few weeks have been particularly difficult in my personal life. My wife lost a pregnancy after many years of attempting to have a second child. The stresses caused by this and the challenges of running the store have been very trying on me and my family.
>
> In moving to another position, I feel that it would provide opportunities to step into another role that would help me to further learn and develop my skills to benefit Walmart [sic] in the future. Many new positions that I might move to would provide

> me opportunities to address the family concerns that I have.
>
> My first choice in my career development would be to pursue the track leading to a MHRM position. I feel that my background in the stores, as well as my competencies are well suited for this type of position. I know that there are not currently positions available, but would like your help and development to move into that direction. In the meantime, I feel that stepping into another role in store operations such as shift manger [sic] would help to continue my development and provide me the necessary time to devote to my family.
>
> *I hope that you will consider my request for reassignment.*

(Plaintiff's E-Mail to Bartell, attached to Def. Br. at Ex. 3; *see also* Pl. Dep. at pp. 109-11) (emphasis added).

The parties dispute whether or not Plaintiff and Bartell specifically discussed his reassignment in the days after Plaintiff sent Bartell the e-mail. (*Compare* Bartell Aff, ¶¶ 8, 9, attached to Def. Br. at Ex. 2 *and* Pl. Dep. at pp. 113-14). However, Plaintiff admits that he spoke with Bartell regarding the e-mail about a week after Plaintiff sent it. (Pl. Dep. at p. 115). Plaintiff further testified that he asked Bartell "what was going on," and Bartell "said he didn't know, he sent up a note, and he would get back with me." (Pl. Dep. at 115). It is undisputed that on November 2, 2010, Bartell forwarded Plaintiff's e-mail to his supervisor, Regional Human Resources Manager Danielle Bank. (Banks Aff. ¶ 4, attached to Def. Br. at Ex. 4).

On November 4, 2010, Plaintiff applied to take FMLA leave. (Pl. Dep. at 120). Plaintiff was released to return to work on January 25, 2011. (Pl. Dep. at pp. 119-120, 122-23). Plaintiff testified that, when he returned to work, he specifically asked to be put back into his original position as store manager. (Pl. Dep. at 128). Plaintiff claims that Bartell responded that Wal-Mart was accepting his request to step down as store manager and that the only position available to him was the assistant manager position at the Hartland, Michigan store. (Pl. Dep. at 127).

Plaintiff admits that he accepted the assistant manager position, but claims that it left him with "no other choice other than to terminate his employment." (Pl. Dep at 141; Pl. Ctr. Stmt of Facts at ¶ 34). Plaintiff testified that the assistant manager position paid approximately $55,000 less than the store manager position. (Pl. Dep. at 139). Plaintiff resigned from his position as assistant manager of the Hartland, Michigan Wal-Mart store in April 2011. (Pl. Dep. at 145).

Plaintiff filed his Complaint against Wal-Mart Stores, Inc. on January 22, 2013 (Doc. #1) alleging that Wal-Mart violated the FMLA by failing to reinstate him to his store manager position when he returned from FMLA leave. Plaintiff also alleges that Defendant retaliated against him for exercising his rights under the FMLA. On January 27, 2014, Defendant filed its Motion for Summary Judgment. (Doc. #17). Plaintiff timely responded, (Doc. #19), and Defendant timely replied. (Doc. #21).

**STANDARD OF DECISION**

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1984), *quoting* FED. R. CIV. P. 56(c).

"The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case." *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). "The moving party may meet its burden by showing that the nonmoving party lacks evidence to support an essential element of its case." *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993). The plaintiff must come forth with more than a "mere scintilla of evidence" in support of his or her position in order to survive summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "The court must view the evidence, all facts, and any inferences that may permissibly be drawn from the facts in the light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

The Family and Medical Leave Act ("FMLA") "entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (*quoting* 29 U.S.C. § 2612(a)(1)(D)).

If an individual takes FMLA-protected leave, that individual is entitled "on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position." 29 U.S.C. § 2614(a)(1).

The FMLA further provides that it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). An individual may enforce his or her rights under the FMLA by instituting a private right of action in state or federal court against his or her employer. 29 U.S.C. §§ 2617(a)(1), (a)(2).

Courts have held that "two distinct theories of recovery arise under these statutes." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006), *citing Arban v. West Pub. Co.*, 345 F.3d 390, 400-01 (6th Cir. 2003). These theories are referred to as the "entitlement" or "interference" theory, and the "retaliation" theory. *Edgar*, 443 F.3d at 507.

The interference theory looks to "whether the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking

a medical leave." *Edgar*, 443 F.3d at 507, *citing Arban*, 345 F.3d at 401.

To establish a *prima facie* case of FMLA interference, a plaintiff must show that (1) he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012), *citing Killian v. Yorozu Auto. Tenn., Inc.,* 454 F.3d 549, 556 (6th Cir. 2006). The plaintiff bears the burden of establishing each of these elements by a preponderance of the evidence. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007).

The retaliation theory requires the fact-finder to consider the employer's intent or motive, *Edgar*, 443 F.3d at 508, to determine whether the employer took an adverse action against its employee because he or she invoked his or her FMLA rights. *Id.*

To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must establish that (1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising his rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Rush v. E.I. DuPont DeNemours & Co.*, 911 F. Supp. 2d 545, 564 (S.D. Ohio 2012)*, citing Donald*, 667 F.3d at 761. "The burden of proof at the *prima facie* stage is minimal." *Seeger v. Cincinnati Bell Tel. Co.,* 681 F.3d 274, 283 (6th Cir. 2012) (*quoting Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir.2007)).

For both interference and retaliation claims that are based on circumstantial evidence, the Sixth Circuit has stated that courts are to apply the traditional *McDonnell Douglas* burden-shifting

framework. *Donald*, 667 F.3d at 762. That is to say, if the Plaintiff meets his burden of establishing a *prima facie* case, "the burden shifts to the employer to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. If the employer succeeds, the burden shifts back to the plaintiff to show that the employer's proffered reason is a pretext for unlawful discrimination." *Murphy v. Ohio State Univ.*, 2013 WL 5878184 at *5 (6th Cir. 2013), *citing Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (internal quotation marks omitted).

**1)** **This Court Shall Grant Defendant's Motion For Summary Judgment On Plaintiff's FMLA Interference Claim Because Plaintiff Cannot Show That Defendant's Legitimate, Non-Discriminatory Justification Is Pretextual.**

Plaintiff's FMLA interference claim is premised on Defendant's failure to reinstate him to the store manager position that he held prior to taking FMLA leave.

Because the parties do not dispute that Plaintiff has established a *prima facie* FMLA interference claim, the burden shifts to the Defendant to proffer a legitimate reason for failing to reinstate Plaintiff to his prior position that is unrelated to the exercise of his FMLA rights.

**A)** **Defendant Has Proffered A Legitimate, Non-Discriminatory Reason for Interfering with Plaintiff's FMLA Rights.**

Defendant argues that Wal-Mart had a legitimate reason to reassign Plaintiff to a different position because it is undisputed that Plaintiff indicated that he "wanted to step down from the store manager position" and requested reassignment prior to going on FMLA leave. (Def. Br. at 10). Defendant maintains that it accepted Plaintiff's request for reassignment prior to him going on FMLA leave "because Plaintiff admitted that he could not do the job and it was in his and the company's best interest." (Def. Br. at 10).

The Court finds that Defendant has strong evidence of a legitimate, non-discriminatory justification for its failure to reinstate Plaintiff to the store manager position that is unrelated to

8

Plaintiff's FMLA leave.  In Plaintiff's e-mail to Bartell, Plaintiff stated that "'[t]he stresses caused by [family issues] and the challenges of running the store have been very trying on me and my family . . ." (E-Mail from Plaintiff to Bartell, attached to Def. Br. at Ex. 3). Plaintiff reasoned that "[a]fter much consideration, I feel that it would benefit me and the company if I considered taking another position within the company." (Def. Br. At Ex. 3).  Plaintiff implored Bartell to "*consider [his] request for reassignment.*"  (Def. Br. at Ex. 3) (emphasis added).

The unambiguous language in the e-mail unequivocally indicates that Plaintiff was requesting reassignment to a new position within Wal-Mart, which would require him to step down from his position as store manager. Thus, the Court finds that Plaintiff actually requested to be removed from his position as a store manager, and reassigned to a different position within the company, prior to the time that Plaintiff even contemplated taking FMLA leave. (Pl. Dep. at 115) ("And at that point [around October 13, 2010] I hadn't looked at any other options, including FMLA").

Additionally, the Court finds that timing bolsters the legitimacy of Defendant's proffered justification.  Bartell testified that he did not have the unilateral authority to reassign a store manager, like Plaintiff, to a different position, when the manager was not adequately progressing on a Performance Improvement Plan. (Bartell Aff., attached to Def. Br. at Ex. 2, ¶ 10).  Bartell was first required to consult with Wal-Mart's Regional Human Resource Manager, Danielle Bank, which he did via e-mail on November 2, 2010.  Plaintiff did not file for FMLA leave until November 4, 2010.  Hence, the evidence indicates that Bartell was taking steps to satisfy Plaintiff's request for reassignment prior to Plaintiff's FMLA leave.

**B)    Plaintiff Has Failed To Show That Defendant's Proffered Justification Is Pretextual.**

9

Because Defendant has proffered a legitimate, non-discriminatory reason for its interference with Plaintiff's FMLA right of reinstatement, the burden now shifts to Plaintiff to show that the proffered justification is pretextual. *Greer v. Cleveland Clinic Health System-East Region*, 503 Fed. App'x 422, 427 (6th Cir. 2012). A plaintiff can establish that the proffered reason is pretextual by showing that it had "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Grace v. USCAR*, 521 F.3d 655, 677 (6th Cir. 2008), *citing Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003). Temporal proximity is insufficient to establish pretext. *Arban*, 345 F.3d at 403.

Plaintiff argues that he rescinded his request for reassignment because he asked to resume his original position as store manager when he returned from FMLA leave. (Pl.'s Dep, attached to Def.'s Mo. At Ex. 1, p. 126; Bartell Dep, attached to Pl. Resp. at Ex. B, p. 84-85). By that time, though, Defendant had already accepted Plaintiff's request for reassignment and had taken steps toward fulfilling his request. Plaintiff has not offered any authority, nor any evidence, on the issue of whether the FMLA required Defendant to allow Plaintiff to revoke his reassignment request. The only authority that this Court found indicates that the FMLA contains no such requirement. *See Miles v. Nashville Elec. Service*, 2012 WL 3561809 at *3 (M.D. Tenn. 2012), *aff'd,* 525 Fed. App'x 382 (6th Cir. 2013):

> To the extent that [plaintiff] argues that relief is warranted based on [defendant's] refusal to permit [plaintiff] to rescind her resignation, this argument also fails . . . assuming [defendant] did have a policy to permit rescission of resignations, any duty [defendant] has to follow that policy does not arise under the FMLA. Indeed, [plaintiff] concedes that the FMLA does not place a duty on an employer to permit rescission of an employee's voluntary resignation.

Here, while Plaintiff did not necessarily "resign," he undoubtedly requested reassignment. This would undoubtedly require Plaintiff to step down from his store manager position. Defendant took

steps to fulfill Plaintiff's request within days after receiving it, and continued to rely on Plaintiff's representation throughout the time Plaintiff was on FMLA leave. Plaintiff's reassignment was, for all intents and purposes, "complete" once Plaintiff returned from his leave of absence. Plaintiff's FMLA leave merely postponed his reassignment to a different position.

Plaintiff has no other evidence indicating that Defendant's justification is pretextual, and his only argument for a finding of pretext is grounded in speculation. Thus, the Court finds that Plaintiff has failed to come forth with evidence showing that Defendant's proffered justification was pretextual. Therefore, this Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's FMLA interference claim because it fails as a matter of law.

**2)      This Court Shall Grant Defendant's Motion for Summary Judgment on Plaintiff's FMLA Retaliation Claim Because Plaintiff Cannot Establish His *Prima Facie* Case.**

The gravamen of Plaintiff's FMLA retaliation claim (Compl. at Count II, pp. 6-7) is that Defendant retaliated against him because he exercised his FMLA rights. Defendant argues that it is entitled to summary judgment because Plaintiff cannot establish a *prima facie* case of FMLA retaliation. Specifically, Defendant challenges Plaintiff's ability to show that Defendant's "adverse employment action" was "causally connected" to Plaintiff's protected FMLA activity. *See Rush*, 911 F. Supp. 2d at 564, *citing Donald*, 667 F.3d at 761 (noting that causal connection is a required element of a *prima facie* FMLA retaliation claim).

In support of its position, Defendant points to Plaintiff's e-mail to Bartell showing that Plaintiff wanted to be reassigned to a new position and removed from his old one, (Def. Br. at Ex. 3), as well as an e-mail from Bartell to Danielle Bank showing that Bartell began the process of fulfilling Plaintiff's request before Plaintiff filed for FMLA leave. (Def. Br. at Ex. 3).

Plaintiff responds that Defendant could not have approved his request for reassignment prior

to his FMLA leave because Bartell's e-mail to Danielle Bank was sent just two days before Plaintiff took leave. (Pl. Resp. at 19). Plaintiff further argues that Bartell, Bank and others knew that he was taking FMLA leave before they approved his reassignment. (Pl.'s Resp. at 19). Plaintiff claims that Defendant only decided to reassign him after he filed for FMLA leave.

The Court finds that Plaintiff cannot establish a *prima facie* case of FMLA retaliation. Even considering all the evidence in the light most favorable to the Plaintiff, the Court finds that no reasonable juror could conclude that a causal connection exists between Plaintiff's FMLA leave and Defendant's reassignment of Plaintiff to a different position. In light of Plaintiff's e-mail explicitly requesting reassignment to a different position (Def. Br. at Ex. 3), Plaintiff cannot meet his burden of showing that Defendant demoted him because he exercised his rights under the FMLA. Defendant has come forth with evidence showing that it had accepted Plaintiff's request for reassignment even before he filed for FMLA leave. (Def. Br. at Ex. 3).

Moreover, for the reasons stated in Section 1 Part B above, Plaintiff cannot show that Defendant's legitimate, non-discriminatory justification is pretextual. Indeed, Plaintiff's own words provide the strongest support for Defendant's position. Plaintiff appears to rely heavily on the fact that he was reassigned on the day he returned from FMLA leave, but temporal proximity alone is insufficient to establish pretext. *Arban*, 345 F.3d at 403. Plaintiff cannot meet his burden of establishing that Defendant's proffered justification was pretextual per the *McDonnell Douglas* burden shifting framework. Therefore, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's FMLA retaliation claim.

## CONCLUSION & ORDER

For the reasons set forth above, Defendant's Motion for Summary Judgment Pursuant to Rule

56 (Doc. #17) is GRANTED.

    **IT IS SO ORDERED.**

                                                           S/Sean F. Cox
                                                           Sean F. Cox
                                                           United States District Judge

Dated: May 15, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 15, 2014, by electronic and/or ordinary mail.

                                                           S/Jennifer McCoy
                                                          Case Manager